**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HEATHER CHRISTINE FOREMAN, | ) | |
| | ) | CASE NO. 1:12CV2120 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Heather Christine Foreman ("Foreman") challenges the final decision of the Commissioner of Social Security, Carolyn W. Colvin[1] ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq.*  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

---

[1]     Defendant indicates that Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013 and that, pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. (Doc. No. 19 at 1.)  Plaintiff does not object.

## I.  Procedural History

On March 4, 2008, Foreman filed applications for POD, DIB, and SSI alleging a disability onset date of January 31, 2007 and claiming she was disabled due to excessive mood swings and bipolar disorder.  (Tr. 167, 177.)  Her application was denied both initially and upon reconsideration.  Foreman timely requested an administrative hearing.

On October 8, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Foreman, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 28-76.)  On October 27, 2010, the ALJ found Foreman was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 13- 21.)  The ALJ's decision became final when the Appeals Council denied further review.  (Tr. 1.)

## II.  Evidence

*Personal and Vocational Evidence*

Age 28 at the time of her administrative hearing, Foreman is a "younger" person under social security regulations. (Tr. 34.)  *See* 20 C.F.R. §§ 404.1563 & 416.963.  She has a high school education and is taking college classes in medical office administration.  (Tr. 35, 41-42.)

*Medical Evidence*

In June 2006, Foreman was admitted to Laurelwood Hospital in Willoughby, Ohio for treatment of depression and marijuana abuse. (Tr. 270.)  She denied any previous formal psychiatric treatment or use of psychotropic medications.  (Tr. 270.)  She reported a history of daily marijuana use, depression, and suicidal thoughts.  (Tr. 270.)  Foreman was stabilized on Lexapro and discharged after a three-day stay with diagnoses of Depressive Disorder NOS and Rule Out Substance Induced Mood Disorder. (Tr. 274.)  She was assessed a Global Assessment

2

of Functioning ("GAF")[2] score of 60 on discharge, and referred for outpatient treatment at Pathways Community Mental Health Agency ("Pathways"). (Tr. 274.)

Melvin Chavinson, M.D., of Pathways conducted an Initial Psychiatric Evaluation of Foreman on August 25, 2006. (Tr. 284-287.) He diagnosed Depression NOS, Marijuana Dependence, Rule Out ETOH abuse, and Rule Out Cocaine Abuse. (Tr. 286.) He described Foreman as "moderately ill" and assessed a GAF score of 52. (Tr. 286-287.) In treatment notes from October 2006 and January 2007, Dr. Chavinson continued to assessed Foreman as "moderately ill." (Tr. 281, 283.)

The record indicates Foreman began treatment with Ruth Martin, M.D., at Neighboring Mental Health Services ("Neighboring") in February 2007. (Tr. 292- 295.) During an Initial Psychiatric Evaluation on February 20, 2007, Foreman reported "severe mood swings" and indicated the Lexapro was not helping. (Tr. 292, 295.) Her mood was described as depressed, anxious, angry, and irritable. (Tr. 294.) Dr. Martin diagnosed Bipolar II - Depressed and Marijuana Dependence. (Tr. 294.) She assessed a GAF score of 70. (Tr. 294.)

---

[2]     The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0 - 100, with lower numbers indicating more severe mental impairments. A GAF score between 0 - 50 indicates serious symptoms or any serious impairment in social, occupational or social functioning. DSM-IV at 34. A GAF score between 51 - 60 denotes "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." *Id*. A GAF score between 61 - 70 indicates "some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." *Id*. GAF scores above 70 generally indicate, at most, slight or minimal impairment. *Id.*

Throughout 2007 to 2010, Foreman continued treatment at Neighboring, where she received regular therapy sessions with Michelle Lanzi, LISW, and medication management with Dr. Martin.  (Tr. 314, 317-319, 355-358.)   In March 2007, Dr. Martin prescribed Lamictal 25 mg

when Foreman started "crying for no reason" during a session. (Tr. 408.)  Over the following few months, Foreman's Lamictal dosage was gradually increased from 25 to 200 mg. (Tr. 402, 405, 407.)   In June 2007, Foreman reported feeling less angry and irritable, and her mood was described as "stable."  (Tr. 355, 401.)  Dr. Martin continued to describe her as "moderately ill" and added Seroquel at 100 mg. (Tr. 395, 397, 399.)

Ms. Lanzi reported in a July 2007 "Mental Status Questionnaire" that Foreman continued to experience mood swings and struggle with impulsivity and impaired judgment when experiencing intense emotions.  (Tr. 317.)  She noted that Foreman was easily "overwhelmed and . . .  agitated by others."  (Tr. 318.)  Ms. Lanzi described Foreman as easily distracted and noted that she had reported experiencing difficulties with concentration and short term memory. (Tr. 318.)  Several months later, Foreman indicated her medications were "not working" and reported feeling "more manic."  (Tr. 392.)  Dr. Martin increased her dosages of both Lamictal and Seroquel.  (Tr. 393.)

In treatment notes from 2008 and early 2009, Dr. Martin continued to describe Foreman as "moderately ill."  (Tr. 391, 447, 489.)  Foreman reported being sober during this time period and her medication dosages were gradually reduced.  (Tr. 389, 445.)  In January 2009, Foreman reported that her therapy sessions were "helpful" and "things are good."  (Tr. 486.)  Her mood was described by Dr. Martin as "stable." (Tr. 484.)  However, beginning in March 2009, Dr.

4

Martin changed her assessment of Foreman from "moderately ill" to "markedly ill."  (Tr. 483, 481, 479, 498, 496, 554-555.)

In December 2009, Dr. Martin completed a "Medical Statement regarding Bipolar Disorder and Related Conditions."  (Tr. 525-526.)  Therein, Dr. Martin opined that Foreman had moderate limitations in daily living activities and social functioning.  (Tr. 525.)  She indicated Foreman had deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner, and, further, that Foreman had repeated episodes of decompensation in work or work-like settings.  (Tr. 525.)  Dr. Martin reported that Foreman was moderately limited in numerous areas, and markedly limited in her abilities to (1) "perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances;" and, (2) "complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Tr. 526.)  Dr. Martin also opined Foreman's mental impairments would cause her to be absent from work more than three times a month.  (Tr. 526.)  She assigned a GAF score of 65 to 70.  (Tr. 525.)

In September 2010, Ms. Lanzi wrote in a letter to the ALJ that, although Foreman had "made good progress" and was "compliant with her medications," she "will never be able to hold down a full time job because of [her] lack of interpersonal skills."  (Tr. 567.)  She indicated Foreman "has difficulty getting along with almost everyone . . . for any length of time" and "virtually no filter for editing what she says, which causes problems with others."  (Tr. 567.)  Because of these problems, and her "difficulty focusing on anything for any length of time," Ms. Lanzi opined Foreman was unable to work in a full-time capacity.  (Tr. 567.)

### *State Agency Consultative Psychological Examiner*

In May 2008, Michael Leach, Ph.D., consultatively examined Foreman at the request of the state Bureau of Disability Determination.  (Tr. 411-416.)  Foreman reported experiencing severe mood swings that "prevent [her] from being able to deal with other people and prevent [her] from having rational thoughts." (Tr. 411.)  She indicated she had experienced these symptoms since she was 14 years old.  (Tr. 412.)  Dr. Leach observed Foreman had pressured speech that was rapid in rate and rhythm, and noted "there were portions of the . . . interview during which she had difficulty maintaining her focus and completing her thoughts."  (Tr. 414.)

Dr. Leach diagnosed Bipolar I Disorder, Manic, Moderate and Cannabis Dependence, Sustained Full Remission.  (Tr. 415.)  He assigned her "a GAF of 60, moderate symptoms," and noted that "[f]unctionally she is showing mild difficulties in her daily life due to her psychological condition."  (Tr. 415.)  Dr. Leach opined Foreman was mildly impaired in her abilities to understand, remember and follow instructions, and to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks.  (Tr. 416.)  He indicated Foreman was moderately impaired in her abilities to relate to others, including fellow workers and supervisors, and to withstand the stresses and pressures associated with daily work activity. (Tr. 416.)

### *State Agency Psychologists*

In March 2007, Catherine Flynn, Psy. D., opined Foreman did not have a severe mental impairment.  (Tr. 299.)  She indicated Foreman had mild limitations in daily living activities and maintaining concentration, persistence, or pace.  (Tr. 309.)  Dr. Flynn also opined Foreman had

no limitations in social functioning and no episodes of decompensation of extended duration. (Tr. 309.) She noted Foreman's "allegations may be exaggerated and are partially credible." (Tr. 311.)

In July 2007, Marianne Collins, Ph.D., indicated Foreman was moderately limited in social functioning and maintaining concentration, persistence, or pace. (Tr. 333.) She found Foreman "would be limited to simple, routine tasks that do not require frequent change or production quotas" and noted she "would have difficulty dealing with the public, but should be able to relate superficially to a few in the workplace." (Tr. 339.)

In June 2008, Douglas Pawlarczyk, Ph.D., opined Foreman was moderately limited in social functioning and maintaining concentration, persistence, or pace. (Tr. 432.) Like Dr. Collins, Dr. Pawlarczyk indicated Foreman "would function best in an atmosphere where tasks are routine, repetitive, w/o strict production requirements, no public interaction, and limited, superficial interaction amongst coworkers and supervisors." (Tr. 420.) He also noted Foreman's "reports of limitations to social interaction due to anger and mood swings [are] credible and supported by all treating records in file." (Tr. 420.)

In October 2008, David Dietz, Ph.D., conducted a records review and affirmed Dr. Pawlarczyk's opinions. (Tr. 476.)

***Hearing Testimony***

At the October 8, 2010 hearing, Foreman testified to the following:

- She lives with her grandparents. (Tr. 34.)

- She graduated from high school. (Tr. 35.) In the Fall of 2008, she began taking community college courses in medical office administration. (Tr. 41-42.) She has two classes on Mondays, three classes on Wednesdays, and one class on Thursday. (Tr. 42.) Each class lasts approximately an hour and fifteen minutes to

7

an hour and a half. (Tr. 42.)

- She gets A's and B's in her college classes. She sometimes has a hard time focusing in class and needs to step outside and take a break for about ten minutes. This happens a couple times per week. (Tr. 43-44.) She occasionally misses classes because she feels depressed and overwhelmed. (Tr. 51.) This happens "a couple times a month or more." (Tr. 51-52.) She once missed a midterm exam because of her depression. (Tr. 52.) She does not have any difficulty with her professors. (Tr. 44.)

- She worked part-time at a restaurant from June to August 2006, but quit "probably because I was angry or had anxiety issues." (Tr. 56-57.) She then worked for a month at an answering service but "didn't even make it out of training" because she didn't get along with the person training her. (Tr. 58.) From November 2006 to January 2007, she worked part-time at a Dairy Queen. She mostly worked in the back cleaning dishes and making ice cream, although sometimes she helped customers and worked the register. (Tr. 55-56.) She was fired from this job. (Tr. 56.) She also worked at Arby's and took a Microsoft Office Certification Class. (Tr. 40, 60.)

- Her last job was at a Mrs. Fields' Cookie Store. She worked there on a part-time basis. (Tr. 36-38.) She missed at least one shift of work per week because she "just didn't feel like going" due to her depression. (Tr. 51.) She quit because she didn't interact well with others and "just couldn't deal with" the stress of the job. (Tr. 37-38.) She has not tried to find work since leaving this job. (Tr. 36.)

- On a typical day when she does not have school, she reads, watches TV, and does her homework. (Tr. 45.) She sweeps, vacuums, and does her own laundry. (Tr. 46.) She does not cook because her grandmother prepares her meals. (Tr. 46-47.) She drives but does not own a car. (Tr. 37.) She sometimes helps her grandparents with shopping. (Tr. 48.) She goes out a few times a week to spend time with her family. (Tr. 47-48.) She has no friends at school, but has one close friend outside of school. (Tr. 44.)

- She has had problems with depression, off and on, since she was in high school. (Tr. 50.) She was hospitalized for depression in June 2006 and has been on medication ever since. (Tr. 49-50.) The medication helps "most of the time" and she feels better since her hospitalization. (Tr. 50-51.)

- Her bipolar disorder has manic and depressive phases. (Tr. 62.) During her manic episodes, she feels "frantic" and "cannot calm [her]self down." (Tr. 53.) She will either feel "extremely happy" or angry. When she's angry, she is "very easy to jump" and will "say things that [she] shouldn't." (Tr. 62.) When she is experiencing a depressive phase, she feels hopeless and stays in her room and

8

does not talk to anyone or go outside.  (Tr. 62.)  During a typical week, she feels "okay" for two days and feels "bad" for two days.  (Tr. 64-65.)

- She is medication compliant.  (Tr. 67.)  She used to smoke marijuana, but has not done so for three years. (Tr. 68.)

The ALJ determined Foreman's past work experience did not constitute "past relevant work" for social security purposes.  (Tr. 72.)  He then posed the following hypothetical to the VE:

> I want you to assume an individual who is 28 years of age, has a high school education.  Is able to perform a full range of exertional work. However, must avoid ladders, ropes, scaffolds.  Must avoid hazards such as machinery or unprotected heights.  Is capable of performing simple and routine tasks, but not in a fast-paced production environment, such as on an assembly line.  Where interaction with co-workers will be superficial in nature.  In a non-public work setting, where they're not required to deal with the public on behalf of the employer.

(Tr. 72-73.)  The VE testified that such a person could perform unskilled work as a packager (990 jobs locally, 190,000 jobs nationally), sorter/addresser (470 jobs locally, 210,000 jobs nationally), or kitchen helper (1,100 jobs locally, 220,000 jobs nationally).  (Tr. 73-74.)  The ALJ then asked whether such a hypothetical individual could perform these jobs if she were to miss an average of three days of work per month.  (Tr. 74.)  The VE indicated that such a hypothetical individual would not be able to perform these jobs.  (Tr. 74.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

9

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and, (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Foreman was insured on her alleged disability onset date, January 31, 2007 and remained insured through the date of the ALJ's decision, October 27, 2010. (Tr. 13.) Therefore, in order to be entitled to POD and DIB, Foreman must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Foreman established a medically determinable, severe impairment due to bipolar disorder; however, her impairment did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1., (Listing 12.04).  (Tr. 15-16.)  Foreman was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels but with certain nonexertional limitations.  (Tr. 16.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Foreman was not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");  *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also

support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

Foreman claims the ALJ erred by (1) failing to provide good reasons for rejecting the opinions of treating physician Ruth Martin; and, (2) formulating an RFC that fails to sufficiently address Dr. Leach's opinions regarding her moderate limitations in concentration, persistence, or pace.  (Doc. No. 17.)

### *Treating Physician*

Foreman argues the ALJ failed to support his rejection of Dr. Martin's opinions that she experiences (1) deficiencies in concentration, persistence, and pace; (2) repeated episodes of decompensation in work or work-like settings; (3) marked limitations in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual; and, (4) marked limitations in her ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Foreman also argues the ALJ failed to give good reasons for rejecting Dr. Martin's opinion that her impairments would cause her to be absent from work more than three times a month.  (Doc. No. 17 at 9-12.)

The Commissioner argues the ALJ "considered Plaintiff's extensive daily activities, her conservative course of treatment, the improvement in Plaintiff's condition with treatment, Plaintiff's complaints and their inconsistency with the record, the evidence showing that Plaintiff worked part time to help her disability claim, the non-medical reasons Plaintiff stopped working, the clinical findings, and GAF scores ranging from 60 to 70 and other opinion evidence."  (Doc. No. 19 at 14-15.)  In light of this, the Commissioner maintains the ALJ properly judged that Dr. Martin's "conclusory" opinions were not consistent with the record evidence.

13

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and, (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5).  The purpose of this requirement is two-fold.

---

[4]     Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

14

First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

In addition, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the

15

Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

In the decision, the ALJ describes Foreman's June 2006 hospitalization, treatment at Pathways, and subsequent treatment history at Neighboring.  (Tr. 17-18.)  The ALJ explains that, by the Spring of 2007, Foreman was keeping regular psychiatric appointments and showing improvement with medication.  (Tr. 18.)  The decision also notes that Foreman reported the ability to perform chores, shop, visit with relatives, read novels, play games, and go to the mall, sporting events and concerts.  (Tr. 18.)  The ALJ then concludes that "[w]hile [Foreman] is limited in her abilities, she is not as limited as alleged" in light of evidence that: (1) she has been attending college part-time since the Fall of 2008 and getting excellent grades; (2) she indicated to her therapist that she is attending college on a part-time basis because she thinks full-time might hurt her disability claims (Tr. 492); (3) her testimony that she stopped working because of her mental impairments is inconsistent with other record evidence indicating she quit her previous jobs for non-medical reasons; and, (4) she has shown improvement with consistent treatment and medication. (Tr. 18.)

The ALJ then finds as follows:

> As for the opinion evidence, in September 2010, claimant's therapist [Michelle Lanzi] described claimant as having improved a great deal, making good progress, compliant with medications, and doing well in school.  The therapist gave the opinion that claimant will never be able to hold down a full-time job due to her lack of interpersonal skills. (Ex. 34F). This opinion is given limited weight because it is inconsistent with the claimant's functioning reflected by her broad range of activities described above. **Likewise, the treating source opinion at Exhibit 29F [i.e. Dr. Martin's December 29, 2009 Medical Statement, Tr. 525-526] also appears to be inconsistent with the claimant's actual functioning.  The psychiatrist's opinion of moderate impairment is**

16

> **given greater [sic] because it is more consistent with the record as a whole and with a GAF of 65 - 70 (Ex. 29F, p. 2).**

(Tr. 18-19.) (emphasis added).

When read in conjunction with the ALJ's discussion of Ms. Lanzi's opinions, it is clear the decision rejected Dr. Martin's opinions of marked limitations and anticipated work absences as inconsistent with Foreman's actual functioning, but accorded weight to her assessment of moderate impairment.  Foreman acknowledges as much in her Brief on the Merits but nevertheless argues that, in summarily rejecting Dr. Martin's assessment of marked limitations, "the ALJ rejected substantial portions of the treating psychiatrist's opinion in a manner contrary to law."  (Doc. No. 17 at 9.)

The Court disagrees.  The ALJ sufficiently articulated good reasons for rejecting Dr. Martin's opinions that Foreman was markedly impaired in her abilities to perform activities within a normal schedule, complete a normal workday/workweek, and perform at a consistent pace without an unreasonable number of interruptions and/or work absences.  The ALJ indicated that these opinions were inconsistent with Foreman's daily functioning, which the decision described in detail as follows:

> Claimant testified that she completed a Microsoft Office certification class (also see Ex. 10E, class completed in about October 2007).  She has been attending college since Fall 2008 and is getting excellent grades.  She testified that she currently attends class three days per week, with two classes on Mondays, three on Wednesdays, and one on Thursdays (each class last 1 1/4 to 1 ½ hours).  Each class has 30 - 50 students.  She has had no problems with her instructors.  She is allowed to take breaks during class, if needed, and only takes about two 10 - minute breaks each week. She testified that attending college makes her feel better and happy.  Upon graduation, she hopes to work in a medical office.  Some evidence indicates that she is attending college only part-time because she thinks full-time may hurt her disability claim (Ex. 23F, p. 16).  She has kept regular appointments with her psychiatrist.  She testified that she was initially non-compliant with her medication but since has been compliant and realizes

17

that medication helps.

Claimant testified that she quit past jobs due to anger or not getting along with others. However, on a Work Activity Report (Ex. 1E) she indicated that she stopped working at Dairy Queen because she took a second job (that is, the job did not end due to medical reasons) and she stopped working at Academy Communications because they reduced her hours and the drive was too far (that is, the job did not end due to medical reasons). Claimant testified that her past inability to hold a job indicates that she is incapable of full-time employment. This assertion is not well-taken. Since claimant has been engaged in mental health treatment, and been medication compliant, she testified that she feels better. Previous job losses occurred while not in treatment and/or prior to medication compliance while in treatment. Claimant testified that she has not applied for any work since applying for disability benefits which detracts from her credibility.

(Tr. 18.) Foreman does not raise any particular objection to these findings, nor does she argue the

ALJ improperly evaluated her credibility.

Read as a whole, the Court cannot say that the ALJ's decision to reject Dr. Martin's

opinions of marked impairment and anticipated work absences is unsupported by substantial

evidence in the record. As the ALJ explained, the evidence reflects Foreman was able to

successfully attend college classes and maintain excellent grades, despite her occasional need to

take breaks or miss class. (Tr. 41-44.). In addition, Foreman reported that she (1) has

experienced gradual improvement with medication; (2) feels better since obtaining consistent

treatment; and, (3) is able to engage in a variety of daily activities, including shopping,

performing chores, reading, visiting with relatives, and going to the mall and sporting events.

(Tr. 45-48, 50-51, 187-193.) While Foreman maintains the ALJ improperly failed to consider

that "she would be worse in a work setting," the ALJ explained that Foreman's previous

difficulties in maintaining employment occurred before she was in treatment and compliant with

her medication. In light of Foreman's testimony that she has improved with medication and her

demonstrated ability to successfully attend college and engage in daily activities, the Court finds

it was not unreasonable for the the the ALJ to determine that Dr. Martin's opinions of marked

limitations and anticipated work absences should not be credited.

The Court also notes that Dr. Martin's opinions in this regard are internally inconsistent

with her assessment of a GAF score of 65 to 70.  (Tr. 525.)  As noted *supra*, a GAF score between

61 -70 indicates "some mild symptoms (e.g. depressed mood and mild insomnia) OR some

difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within

the household) but generally functioning pretty well, has some meaningful interpersonal

relationships." DSM-IV at 34.  Dr. Martin's opinions that Foreman is markedly impaired in her

abilities to maintain a schedule, complete a normal workday/workweek, or perform at a consistent

pace without an unreasonable number of interruptions or work absences are simply inconsistent

with the "mild symptoms" represented by a GAF score of 65 to 70.  The ALJ specifically noted

this inconsistency in the Decision.

Moreover, Dr. Martin's opinions are also inconsistent with those of state agency physicians

Collins, Pawlarczyk, and Dietz, each of whom found only moderate limitations in Foreman's

functioning.  (Tr. 333-339, 420-432, 476.)  The opinions of non-examining state agency medical

consultants can, under certain circumstances, be given significant weight. *See e.g. Black v.*

*Comm'r of Soc. Sec.*, 2012 WL 4506018 at * 5 (N.D. Ohio Sept. 28, 2012); *Hart v. Astrue*, 2009

WL 2485968 at * 8 (S.D. Ohio Aug. 5, 2009).  This occurs because non-examining sources are

viewed "as highly qualified physicians and psychologists who are experts in the evaluation of

medical issues in disability claims under the [Social Security] Act." SSR 96-6p, 1996 WL

374180.

Based on the above, and considering the decision as a whole, the Court finds the ALJ articulated good reasons for according only limited weight to Dr. Martin's opinions of marked impairment and anticipated work absences. The Court further finds the ALJ's decision to accord these opinions limited weight is supported by substantial evidence in the record. Accordingly, Foreman's argument that the ALJ violated the treating physician rule in his consideration of Dr. Martin's opinions of marked impairment and anticipated work absences is without merit.

### RFC and the Opinion of Consultative Examiner Leach

Foreman also argues the ALJ erred by formulating an RFC that failed to sufficiently address Dr. Leach's opinions regarding her moderate limitations in concentration, persistence, or pace. (Doc. No. 17.) Specifically, Foreman maintains that the ALJ failed to sufficiently consider Dr. Leach's opinion that Foreman's "mood disturbances . . . would be exacerbated by the stresses and pressures of daily work." (Tr. 416.) She argues that, when Dr. Leach's opinions are "properly and fully considered," they provide "more evidence that the RFC ascribed to Foreman is inadequate." (Doc. No. 17 at 13.)

The Commissioner asserts that the ALJ reasonably accounted for the limitations described by Dr. Leach "by finding that Plaintiff could perform only the unskilled jobs the vocational expert identified, which involved simple tasks, minimal concentration requirements, very limited contact with others, and no fast-paced work, production quotas, or assembly-line work." (Doc. No. 19 at 17.)

Pursuant to the regulations, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i). Nonetheless, because "State agency medical and psychological consultants

20

and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists," ALJs must consider their findings and opinions.  *Id.*  When doing so, an ALJ "will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions."  20 C.F.R. § 404.1527(e)(2)(ii).  Finally, an ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist" unless a treating physician's opinion has been accorded controlling weight.  *Id.*

After discussing the medical evidence and Foreman's testimony regarding her daily activities and improvement with medication, the ALJ considered Dr. Leach's opinion as follows:

> The consultative examiner at Exhibit 16F [i.e. Dr. Leach's May 2008 Disability Assessment Report] gave the opinion that claimant's mental ability to relate to others, including co-workers and supervisors, is moderately impaired; her mental ability to understand, remember, and follow instructions is mildly impaired; her mental ability to maintain attention, concentration, persistence and pace to perform simple repetitive tasks is mildly impaired; and **her mental ability to withstand the stresses and pressures of daily work activity is moderately impaired**.  This opinion is given some weight on the basis that it supports the general conclusion that the claimant's impairments are not disabling.

(Tr. 19.) (emphasis added).

The ALJ then formulated the RFC as follows:  "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitation: no ladders, ropes, scaffolds, or hazards such as dangerous machinery or unprotected heights;

superficial interaction with co-workers; and a non-public work setting where claimant is not required to deal with the public on behalf of the employer." (Tr. 16.)

Foreman argues the ALJ improperly rejected Dr. Leach's opinions regarding Foreman's moderate impairment "to withstand the stresses and pressures of daily work activity" by formulating an RFC that fails to sufficiently accommodate her limitations in concentration, persistence, and pace. The Commissioner maintains the ALJ properly considered Dr. Leach's opinions and accounted for them by including concentration, persistence and pace limitations in the hypothetical posed to the VE during the hearing.

The Court agrees with the Commissioner. The ALJ acknowledged Dr. Leach's opinions (including his opinion that Foreman was moderately limited in her ability to "withstand the stresses and pressures of daily work activity") and explained that he accorded these opinions "some weight." Moreover, while the RFC itself does not include limitations regarding Foreman's concentration, persistence, or pace, the ALJ expressly included such limitations in his hypothetical to the VE, as follows:

> I want you to assume an individual who is 28 years of age, has a high school education. Is able to perform a full range of exertional work. However, must avoid ladders, ropes, scaffolds. Must avoid hazards such as machinery or unprotected heights. **Is capable of performing simple and routine tasks, but not in a fast-paced production environment, such as on an assembly line**. Where interaction with co-workers will be superficial in nature. In a non-public work setting, where they're not required to deal with the public on behalf of the employer.

(Tr. 72-73.) (emphasis added). Thus, when the VE testified in response to this hypothetical that such a person could perform unskilled work as a packager, sorter/addresser, or kitchen helper, he included in his analysis that the individual would be restricted to performing simple and routine tasks in a production environment that is not fast-paced, such as an assembly line. (Tr. 73-74.)

These same jobs were set out by the ALJ in the Decision.  Although the RFC itself does not include this language, the Court finds this omission to be harmless error in light of the fact the ALJ relied on VE testimony that accounted for Foreman's limitations.

In this respect, Plaintiff's reliance on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010) is misplaced.  In *Ealy*, the ALJ concluded that the claimant had moderate difficulties with regard to concentration, persistence or pace, but the ALJ failed to provide the VE with a fair summary of those conclusions.  *Id.* at 516.  Instead, the hypothetical posed by the ALJ only limited the claimant to simple, repetitive tasks and instructions and omitted speed or pace-based restrictions.  *Id.*  The *Ealy* Court concluded that because the hypothetical inadequately described the claimant's limitations, the VE's testimony did not constitute substantial evidence.  In the instant case, however, the hypothetical question accounted for Foreman's moderate limitations in concentration, persistence, and pace by limiting her to "simple and routine tasks, but **not in a fast-paced production environment, such as on an assembly line**." (Tr. 72.)[5] (emphasis added). *Ealy* is, therefore, distinguishable.  *See also Kline v. Astrue*, 2013 WL 1947164 at * 5, fn 1 (N.D. Ohio April 17, 2013) (noting that "if the ALJ intended to include pace in the RFC, his failure to do so was harmless, as the hypothetical expressly *included* a pace restriction. The VE's testimony

---

[5]     Foreman argues, summarily, that the RFC is improper because the hypothetical failed to "mention that an individual with Foreman's limitations in concentration, persistence, and pace also cannot be counted on to meet production quotas." (Doc. No. 17 at 15.) Foreman cites no authority for the proposition that a hypothetical question must expressly include the term "production quotas" in order to adequately account for limitations in concentration, persistence, and pace.  Moreover, the hypothetical in the instant case did expressly include a restriction from working in "fast-paced production environment, such as an assembly line." (Tr. 72.)  Foreman gives no meaningful explanation as to why this formulation is not sufficient to encompass a restriction against jobs involving production quotas.

was based on a hypothetical with a pace restriction, making the case at bar distinguishable from *Ealy*").

Because the hypothetical question encompassed Foreman's moderate limitations in concentration, persistence and pace, the Court finds that the ALJ's failure to expressly include these limitations in the RFC itself constitutes harmless error under the circumstances.  The Court further finds the ALJ did not improperly reject Dr. Leach's opinions.  Foreman's assignment of error is without merit.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

<u>/s/ Greg White</u>
U.S. Magistrate Judge

Date: June 24, 2013